# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

George S. Glassmeyer, Appellant,

v.

South Carolina Lottery Commission, Respondent.

Appellate Case No. 2024-001296

———————

Appeal from Richland County
Daniel Coble, Circuit Court Judge

———————

Opinion No. 6155
Heard December 16, 2025 – Filed July 29, 2026

———————

**AFFIRMED**

———————

Taylor Meriwether Smith, IV, of Meriwether Law, LLC,
of Columbia, for Appellant.

Vordman Carlisle Traywick, III and Sarah Cameron
Frierson, both of Robinson Gray Stepp & Laffitte, LLC,
of Columbia, for Respondent.

———————

**GEATHERS, J.:** Appellant George S. Glassmeyer appeals the circuit court's order granting summary judgment in favor of Respondent South Carolina Lottery Commission. Glassmeyer argues the circuit court erred by determining the following: (1) the Lottery Commission did not violate the settlement agreement between the parties or the Freedom of Information Act (FOIA)[1] when the Lottery

———

[1] S.C. Code Ann. §§ 30-4-10 to -165 (2007 & Supp. 2025).

Commission declined to provide the names of lottery winners; (2) the Lottery Commission did not violate FOIA by redacting the signatures of the drawers on checks because the Lottery Commission was required to redact the signatures under the Family Privacy Protection Act (FPPA);[2] and (3) three of Glassmeyer's FOIA requests were overly broad and unduly burdensome. We affirm.

## FACTS AND PROCEDURAL HISTORY

In 2013 and 2014, Glassmeyer submitted FOIA requests to the Lottery Commission, seeking information about winners of lottery prizes equal to or greater than $1 million. *S.C. Lottery Comm'n v. Glassmeyer*, 433 S.C. 244, 248, 857 S.E.2d 889, 891 (2021). Specifically, Glassmeyer sought "'[the] full name, address, and telephone number; the date and gross amount of the claim; and a copy of any and all forms of identification obtained from' each winner." *Id.* The Lottery Commission determined it was statutorily barred from releasing the information under FOIA.[3] Consequently, the Lottery Commission sought a declaratory judgment from the circuit court to confirm that it could not release the information and injunctive relief barring Glassmeyer from "obtaining the information." *Id*. at 248, 857 S.E.2d at 892.

On February 15, 2022, the parties entered into a settlement agreement. Relevant to this appeal, the parties agreed to the following:

> [The Lottery Commission]'s current FOIA policy governing the disclosure of personal information under the unreasonable invasion of privacy exemption to FOIA, S.C. Code Ann. § 30-4-40(a)(2), shall remain in full force until May 31, 2023. *If the South Carolina General Assembly does not enact legislation addressing this specific issue by such date, then [the Lottery Commission] will provide the full names, cities, and states of lottery prize claimants in response to FOIA requests after that date.*

---

[2] S.C. Code Ann. §§ 30-2-10 to -50 (2007 & Supp. 2025).

[3] The Lottery Commission relied on section 30-4-40(a)(2) of FOIA, which provides a public body may exempt from a FOIA request disclosure "[i]nformation of a personal nature where the public disclosure thereof would constitute unreasonable invasion of personal privacy."

[Glassmeyer] agrees not to submit, directly or indirectly, any FOIA requests to [the Lottery Commission] through May 31, 2023[,] seeking information regarding claimants and/or prize winners through that date.

(emphasis added).

On June 14, 2023, the General Assembly adopted and ratified the 2023–24 Annual Appropriations Bill. The bill included budget proviso 3.5 that provided,

Pursuant to Section 30-4-40, the South Carolina Freedom of Information Act, [the Lottery Commission] is prohibited from disclosing a winner's name, address, telephone number, date of birth, social security number, electronic address, and any copy of the forms of identification provided to the [Lottery Commission] unless consent is given by the winner. In response to a request, the [Lottery Commission] only may allow the release of the date of the claim and draw, game played, amount of prize won, retailer location where the ticket was sold, and the hometown of the winner.

Act No. 84, 2023 S.C. Act 477, 767, Part I.B, § 3, Proviso 3.5. Proviso 3.5, along with the rest of the appropriations bill, went into effect on July 1, 2023.

On June 16, 2023, after ratification by the General Assembly but before the appropriations bill went into effect, Glassmeyer sent a letter to the Lottery Commission outlining eighteen specific FOIA requests. Of those, the following requests are before this court:

1. The first and last name, and city and state of residence, of all persons who submitted bona fide claims for gross lottery winners (i.e., before any tax withholding or setoff(s)) equal to or exceeding one million dollars from June 30, 2021 through July 15, 2023, inclusive.

. . . .

4. Copies of all checks (front and back) and/or wire transfers issue[d] to all persons identified in Item #1 above.

5. Copies of all checks (front and back) and wire transfers issue[d] by [the Lottery Commission] from June 30, 2021 through June 15, 2023 (inclusive) not otherwise provided by Item #4 above.

. . . .

12. A copy of all bills, invoices, and statements submitted by any vendor, contractor, supplier, professional, or professional entity and received by [the Lottery Commission] between June 30, 2021 and June 15, 2023, inclusive.

. . . .

18. Copies of all emails received, sent, or forwarded by any and all [the Lottery Commission] employees from June 30, 2021 through June 15, 2023, inclusive.

We will refer to requests 5, 12, and 18 collectively as the Documents Requests.

Glassmeyer sought the information because of his suspicion that the Lottery Commission's employees were embezzling public funds. The Lottery Commission received Glassmeyer's FOIA requests on June 21, 2023.

As referenced above, five of Glassmeyer's FOIA requests are before this court on appeal—requests 1 and 4 and the Documents Requests. The Lottery Commission issued its determination letter on the FOIA request on July 5, 2023.[4] The Lottery Commission partially denied request 1, reasoning it could not provide the full names of lottery winners because of the prohibition in proviso 3.5.

_____

[4] "Each public body, upon written request for records made under [FOIA], shall within ten days (excepting Saturdays, Sundays, and legal public holidays) of the receipt of the request, notify the person making the request of its determination and the reasons for it . . . ." § 30-4-30(C). The Lottery Commission's determination letter was issued on July 5, thereby falling within the prescribed statutory window.

The Lottery Commission released copies of the checks to lottery winners sought in request 4 but redacted the signatures of the drawers on the checks. The Lottery Commission informed Glassmeyer it was required to redact the signatures under FPPA but disclosed that the drawers for the checks were the Lottery Commission's current Chief Financial Officer (CFO) and his predecessor.

The Lottery Commission denied the Documents Requests on the grounds these requests were unduly burdensome, overly broad, and otherwise improper. The Lottery Commission determined that in order to fulfill the Documents Requests, it would have to review approximately 120,000 checks and wire transfers; 8,000 bills, invoices, and statements; and 3,000,000 emails from its 125 employees to redact a range of personal and privileged information. In the determination letter, the Lottery Commission advised Glassmeyer that he had until July 7, 2023, to inform the Lottery Commission whether he was willing to withdraw or revise the objectionable requests. Glassmeyer declined to withdraw or revise any requests.

The Lottery Commission asked Glassmeyer again on August 16, 2023, if he would be willing to narrow or limit the Documents Requests. Glassmeyer did not respond, and on September 15, 2023, he commenced the underlying action, alleging breach of contract and violations of FOIA. The Lottery Commission counterclaimed under section 30-4-110(A),[5] seeking a declaratory judgment that it did not have to furnish responsive records to the Documents Requests because the requests were overly broad, unduly burdensome, and otherwise improper.

The parties filed cross-motions for summary judgment. As part of its motion, the Lottery Commission submitted an expert witness affidavit from John S. Nichols, an attorney. Nichols opined that it would cost between $7,820,100 and $10,426,800 for the Lottery Commission to hire outside counsel to review and redact all the responsive information for the Documents Requests. Nichols further opined that it would cost $377,978.75 if the Lottery Commission's employees reviewed and redacted the documents instead and would take 52,134 hours to complete the review. Finally, because Glassmeyer requested the documents be produced in paper format, Nichols calculated that printing would cost the Lottery Commission between $312,800 and $1,564,000. Glassmeyer stipulated to these calculations.

---

[5] Section 30-4-110(A) provides that "[a] public body may file a request for hearing with the circuit court to seek relief from unduly burdensome, overly broad, vague, repetitive, or otherwise improper requests . . . ."

Following a hearing, the circuit court granted summary judgment in favor of the Lottery Commission. Glassmeyer filed a motion under Rule 59(e), SCRCP, which the circuit court denied after a hearing. This appeal followed.

## ISSUES ON APPEAL

I.    Did the circuit court err by determining the Lottery Commission did not breach the settlement agreement or violate FOIA when it declined to provide the lottery winners' names sought in request 1?

II.    Did the circuit court err by deciding the Lottery Commission did not violate FOIA by redacting the drawers' signatures on the checks he sought under request 4?

III.    Did the circuit court err by concluding the Documents Requests were overly broad and unduly burdensome?

## STANDARD OF REVIEW

An appellate court reviews a grant of summary judgment using "the 'genuine issue of material fact' standard set forth in the text of [Rule 56(c), SCRCP]." *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 463, 892 S.E.2d 297, 301 (2023). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "Where cross motions for summary judgment are filed, the parties concede the issue before [the court] should be decided as a matter of law." *Wiegand v. U.S. Auto. Ass'n*, 391 S.C. 159, 163, 705 S.E.2d 432, 434 (2011).

## LAW AND ANALYSIS

### I.    The Lottery Winners' Names

Glassmeyer asserts the circuit court erred by determining the Lottery Commission did not breach the settlement agreement or violate FOIA when it declined to provide the lottery winners' names sought in request 1. Glassmeyer argues that the moment the Lottery Commission received request 1, all the conditions and terms of the settlement agreement had been satisfied and the Lottery Commission had "an immediate duty" to provide information on the lottery winners.

Glassmeyer further argues that proviso 3.5 was not in effect at the time the Lottery Commission received his request and that the date the request was received is the relevant date to determine what information could be disclosed. We disagree.

### A. Violation of FOIA

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Id.*

"A person has a right to inspect, copy, or receive an electronic transmission of any public record of a public body, except as otherwise provided by Section 30-4-40, or other state and federal laws . . . ." § 30-4-30(A)(1). Section 30-4-40(A)(4) provides that the public body need not disclose public records that are specifically "exempted from disclosure by statute or law." When a public body receives a written FOIA request, the public body "shall within ten days (excepting Saturdays, Sundays, and legal public holidays) of the *receipt of the request*, notify the person making the request of its determination and the reasons for it." § 30-4-30(C) (emphasis added).

We hold the circuit court did not err by determining the Lottery Commission's refusal to disclose the lottery winners' name pursuant to proviso 3.5 was not a violation of FOIA because the proviso was in effect on the date the Lottery Commission issued its determination. The parties do not dispute that proviso 3.5 came into effect in the intervening period between the receipt of Glassmeyer's request and the deadline for the Lottery Commission to issue its determination. The receipt of the request started the clock for the ten-day statutory period for the Lottery Commission to respond with its determination; however, the Lottery Commission was required to act in accordance with the law as it existed on the date it issued its determination. On the date of its determination (July 5), the Lottery Commission was explicitly prohibited from disclosing the lottery winners' full names under proviso 3.5, which became law effective July 1. *See Edwards v. State*, 383 S.C. 82, 91, 678 S.E.2d 412, 417 (2009) ("Executive agencies are required to comply with the General Assembly's enactment of a law until it has been otherwise declared invalid.").

### B. Settlement Agreement Violation

"In South Carolina jurisprudence, settlement agreements are viewed as contracts." *Pee Dee Stores, Inc. v. Doyle*, 381 S.C. 234, 241, 672 S.E.2d 799, 802 (Ct. App. 2009). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009). "The doctrine of impossibility excuses performance when 'the thing to be done cannot by any means be accomplished, for if it is only improbable or out of the power of the obligor, it is not deemed in law impossible.'" *Morin v. Innegrity, LLC*, 424 S.C. 559, 567, 819 S.E.2d 131, 136 (Ct. App. 2018) (quoting *Hawkins v. Greenwood Dev. Corp.*, 328 S.C. 585, 593, 493 S.E.2d 875, 879 (Ct. App. 1997)). "[C]ourts will not enforce a contract when the subject matter of the contract or an act required for performance violates public policy as expressed in constitutional provisions, statutory law, or judicial decisions." *White v. J.M. Brown Amusement Co.*, 360 S.C. 366, 371, 601 S.E.2d 342, 345 (2004).

The circuit court properly concluded that the Lottery Commission did not violate the settlement agreement because the Lottery Commission's performance was excused under the doctrine of impossibility. Assuming without deciding that the Lottery Commission had a duty to disclose the lottery winners' names under the contract that was independent from any duty under FOIA, the settlement agreement provided in unambiguous language that the parties intended for Glassmeyer to submit FOIA requests after May 31, 2023, to receive the lottery winners' information and that those FOIA requests would be handled in accordance with FOIA. *See Madden v. Bent Palm Invs., LLC*, 386 S.C. 459, 464–65, 688 S.E.2d 597, 600 (Ct. App. 2010) ("The language [of the contract] alone will determine the contract's force where such language is unambiguous . . . ."). The Lottery Commission was barred by law from releasing the requested information on the date of its determination letter, and the release of the requested information could not be accomplished by any means under FOIA. *See* Act No. 84, 2023 S.C. Act 477, 767, Part I.B, § 3, Proviso 3.5 ("[The Lottery Commission] is prohibited from disclosing a winner's name, address, telephone number, date of birth, social security number, electronic address, and any copy of the forms of identification provided to the board unless consent is given by the winner. In response to a [FOIA] request, [the Lottery Commission] only may allow the release of the date of the claim and draw, game played, amount of prize won, retailer location where the ticket was sold, and the hometown of the winner.").

For the foregoing reasons, we affirm the circuit court's order determining the Lottery Commission did not violate the settlement agreement or FOIA by declining to disclose the lottery winners' personal information.

## II. Redaction of Drawers' Signatures

Glassmeyer argues that because FPPA does not explicitly require state agencies to redact public officials' signatures when responding to a FOIA request, state agencies are not required to do so. Glassmeyer asserts that even if FPPA can be applied to FOIA requests, fulfilling his request would not have violated FPPA because the Lottery Commission would not be making the information available to the general public by releasing the signatures to him. Lastly, Glassmeyer asserts that the signature of a public official on a public record is not personal identifying information and is of legitimate and important interest to the public. We disagree.

Glassmeyer's request 4 specifically sought "[c]opies of all checks (front and back) and/or wire transfers issued" to "all persons who submitted bona fide claims for gross lottery winnings equal to or exceeding one million dollars from June 30, 2021[,] to June 15, 2023." Glassmeyer received copies of the checks but the Lottery Commission had redacted the drawers' signatures. The general counsel for the Lottery Commission informed Glassmeyer that the actual signatures were not subject to disclosure under FPPA, provided Glassmeyer via email the names of the respective drawers of the checks with the corresponding check numbers, and confirmed that each check bore a single signature.

In *Glassmeyer v. City of Columbia*,[6] this court considered whether FOIA compelled disclosure of information that is protected under FPPA, specifically the home addresses, personal telephone numbers, and email addresses of candidates for the city manager position. This court held that while the candidates had a privacy interest in that information, the court was required to balance the privacy interest of the candidates against the interest of the public's need to know the information when determining whether FOIA compels disclosure when FPPA seeks to protect the information. *Id.* at 223, 777 S.E.2d at 840–41.

Here, the drawers' privacy interest in their signatures on checks sent to lottery winners is moderate. The drawers' privacy interest in their signatures extends from their general right to privacy which "is defined as the right of an individual to be let

---

[6] 414 S.C. 213, 222, 777 S.E.2d 835, 840 (Ct. App. 2015), *cert. denied*, S.C. Sup. Ct. Order dated June 16, 2016.

alone and to live a life free from unwarranted publicity."[7] *Glassmeyer*, 414 S.C. at 220, 777 S.E.2d at 839. FPPA protects signatures because signatures are unique marks that can identify a specific person. *See* § 30-2-30(1) (defining "personal information" to mean "information that identifies . . . an individual" and includes signatures as personal information); *Glassmeyer*, 414 S.C. at 222, 777 S.E.2d at 840 ("In [FPPA], the General Assembly recognized the need for state agencies to develop privacy policies and procedures to limit and protect the collection of personal information."); *see also U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 500 (1994) ("An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form.").[8] Whereas one's typed name is not a uniquely identifying marker, one's signature is.

On the other hand, the public has a minimal interest in the information revealed by the actual signatures beyond the identities of the drawers. The signatures certainly offer a mechanism to confirm the identity of those who disbursed the funds. But the signatures' function in this case would just be confirmation of already-known information given that the Lottery Commission supplied the name of the drawer on each check. The public's interest in a particular piece of information is minimized when it is cumulative to information that has already been disclosed.

Under these facts, we find that the drawers' privacy interest in their signatures on the checks is not outweighed by the public's interest in confirming known information: the identities of the drawers. *See Glassmeyer*, 414 S.C. at 223, 777 S.E.2d at 840 (acknowledging the need to "balance the privacy interest . . . against the interest of the public's need to know this information"). Accordingly, we affirm the circuit court's finding that FPPA protects the signatures from disclosure because the public interest in the information does not outweigh the privacy interest in the signatures.[9]

---

[7] We acknowledge a different calculation may be needed for privacy interests depending on whether the individual is a public official signing a document in her official capacity, an elected official signing a document in her official capacity, or a private citizen signing a document in her personal capacity. However, given our analysis of the public interest discussed herein, we need not reach this issue.

[8] The checks were signed with electronic signatures.

[9] We take a moment to address that the circuit court found this issue was moot, reasoning that the information in the signatures (i.e., the names of the drawers) had

## III. Overly Broad and Unduly Burdensome

Glassmeyer asserts the circuit court erred by relying on discovery practice principles to resolve the issue of whether the Documents Requests (i.e., requests 5, 12, and 18) were unduly burdensome and overly broad because those principles do not serve FOIA's purpose of ensuring government transparency. Glassmeyer further asserts that the court ignored FOIA's requirement to liberally construe the statute in favor of the requester. We disagree.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges*, 341 S.C. at 85, 533 S.E.2d at 581. "Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Id.*

In enacting FOIA, the General Assembly found it was "vital in a democratic society that public business be performed in an open and public manner so that citizens shall be advised of the performance of public officials and of the decisions that are reached in public activity and in the formulation of public policy." § 30-4-15. FOIA grants persons the right to "inspect, copy, or receive an electronic transmission of any public record of a public body." § 30-4-30(A). It also provides that a public body may seek relief in the circuit court from "unduly burdensome, overly broad, vague, repetitive, or otherwise improper requests, or where it has received a request but it is unable to make a good faith determination as to whether the information is exempt from disclosure." § 30-4-110(A).

---

been disclosed even though the form (i.e., typed instead of the actual signature) was different than requested. We hold that the circuit court improperly found the issue was moot. Glassmeyer was seeking the signatures that were not disclosed, and had the circuit court determined the signatures were improperly redacted, Glassmeyer would have received the signatures. That the information was cumulative to information Glassmeyer had already received does not mean the court's judgment would have had no practical legal effect. Instead, the court, after performing the balancing test, still could have resolved the test in favor of disclosing the signatures. Therefore, the matter was not moot because the court's judgment would have had a practical legal effect on the controversy. *See Sloan v. Greenville County*, 380 S.C. 528, 535, 670 S.E.2d 663, 667 (Ct. App. 2009) ("A case becomes moot when judgment, if rendered, will have no practical legal effect upon the existing controversy.").

Our courts have not yet had cause to define the terms "unduly burdensome" and "overly broad" in the FOIA context; however, how other states and federal courts have addressed these terms under similar statutory schemes is helpful to our analysis. *See State Farm Mut. Auto. Ins. Co. v. Goyeneche*, 429 S.C. 211, 224, 837 S.E.2d 910, 917 (Ct. App. 2019) ("When there is no South Carolina case directly on point, our courts may look to persuasive authority from other jurisdictions."). When reviewing whether a request is unduly burdensome, federal courts have generally looked at the time required to conduct the search, the cost, and the number of files that would have to be searched. *Pison v. U.S. Dep't of Justice*, 80 F. Supp. 3d 211, 217 (D.D.C. 2015). "Courts also have held that agencies are excused from complying with FOIA requests where 'review[ing], redact[ing], and arrang[ing] for inspection [of] a vast quantity of material' presents an unreasonable burden." *Long v. Immigr. & Customs Enf't*, 149 F. Supp. 3d 39, 55–56 (D.D.C. 2015) (quoting *Am. Fed'n of Gov't Emps. v. U.S. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990)); *see also Nat'l Ass'n of Crim. Def. Laws. v. Chi. Police Dep't*, 924 N.E.2d 564, 577 (Ill. App. Ct. 2010) ("A request that is overly broad and requires the public body to locate, review, redact and arrange for inspection a vast quantity of material that is largely unnecessary to the appellants' purpose constitutes an undue burden.").

Federal courts have found requests to be overly broad when the requests are sweeping and lack specificity. *See Am. Fed. Gov't Emps., Local 2782 v. Dep't of Com.*, 632 F. Supp. 1272, 1277–78 (D.D.C. 1986) ("[B]road, sweeping requests lacking specificity are not permissible." (quoting *Marks v. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978))); *see also Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 62 (D.D.C. 2013) ("The requests were not valid because they did not describe the records sought sufficiently to allow a professional employee familiar with the area in question to locate responsive records."). Pennsylvania's FOIA-like statute requires sufficient specificity in information requests to help the public body ascertain what records are being requested. *See* 65 Pa. Stat. and Cons. Stat. § 67.703 (West 2009) ("A written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested . . . ."). Pennsylvania courts have adopted a non-exhaustive, multifactor test to guide a specificity analysis: (1) the request must identify a transaction or activity; (2) the request must identify "a discrete group of documents, either by type . . . or by recipient"; and (3) the "timeframe of the request should identify a finite period of time for which records are sought." *Pa. Dep't of Educ. v. Pittsburgh Post-Gazette*, 119 A.3d 1121, 1125–26 (Pa. Commw. Ct. 2015); *see also Pa. Off. of Governor v. Brelje*, 312 A.3d 928, 938 (Pa. Commw. Ct. 2024) (using the multifactor test for specificity).

Here, the circuit court did not err by finding the Documents Requests were unduly burdensome because it is uncontested in the record that fulfilling the requests would cost millions of dollars and require thousands of man-hours. Glassmeyer sought to exercise his right to inspect public records and FOIA must be construed to allow access. *See* § 30-4-15. However, fulfilling FOIA requests cannot be permitted to grind a public body's operations to a halt. *See Am. Fed. of Gov't Emps. v. U.S. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990) ("FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters.").

Further, the circuit court did not err by concluding the Documents Requests were overly broad because the sweeping requests offer little specificity beyond a long time period and a broad category of information. The Documents Requests offered no limits as to what subject matter or topics should be included in the search for responsive documents; effectively, a professional seeking to complete the Documents Requests would have no guidelines by which to locate the responsive documents. *See Freedom Watch, Inc.*, 925 F. Supp. 2d at 61 (finding that a request for "all" records that "refer or relate to . . . [a]ny and all communications to or from President Obama, his administration, or the White House in general regarding China" was too broad and lacked specificity and granting relief to the agency from fulfilling the request); *Pa. Dep't of Educ.*, 119 A.3d at 1125–26 (using the non-exhaustive, multifactor test to determine specificity). Glassmeyer sought over three million documents from a two-year period. The Documents Requests were sweeping, comprising hundreds of thousands of records, and offered no way for the Lottery Commission to identify which documents could be responsive.

Accordingly, for these reasons, the circuit court's conclusion that the Documents Requests were overly broad and unduly burdensome is affirmed.[10]

---

[10] At the time of this action, the Lottery Commission did not and had not ever charged fees to retrieve, redact, and provide copies of public records. Glassmeyer argues that the Lottery Commission cannot decline to charge fees for FOIA requests and be relieved from responding to requests that are too costly. This argument is meritless. FOIA provides that a public body "*may* establish and collect reasonable fees not to exceed the actual cost of the search, retrieval, and redaction of records." § 30-4-30(B) (emphasis added). FOIA also provides that a public body may go to the courts to seek relief from unduly burdensome and overly broad requests but does not limit relief from such requests based on whether a public body collects fees. § 30-4-110. Charging fees is not a prerequisite for a public body to receive relief from an unduly burdensome or overly broad request.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's order granting summary judgment because the Lottery Commission did not violate the settlement agreement or FOIA by declining to disclose lottery winners' personal information. We further affirm the circuit court's determination that the Lottery Commission properly redacted the signatures because the drawers' privacy interest in their signatures outweighed the public's interest in cumulative information. Finally, we affirm the circuit court's grant of relief to the Lottery Commission from responding to the Documents Requests because those requests were overly broad and unduly burdensome.

**AFFIRMED.**

**KONDUROS and VINSON, JJ., concur.**